UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

THE HONORABLE MICHAEL W. FITZGERALD, DISTRICT JUDGE

SCPS LLC, et al.,

Plaintiffs,

vs.

BEN TRAVIS LAW, et al.,

Defendants.

2:25-CV-3255-MWF

REPORTER'S TRANSCRIPT OF HEARING

Los Angeles, California

Monday November 17, 2025

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here: www.amydiazfedreporter.com*

APPEARANCES OF COUNSEL:

For the Plaintiffs:

LOWENSTEIN SANDLER LLP
By: Gavin Rooney, Attorney at Law
One Lowenstein Drive
Roseland, New Jersey 07068

MURPHY ROSEN LLP
By: Paul Murphy, Attorney at Law
100 Wilshire Boulevard, Suite 100
Santa Monica, California 90401

For the Defendants:

BEN TRAVIS LAW APC
By: Ben Travis, Attorney at Law
12481 High Bluff Drive Suite 300
San Diego, California 92130

THE CLERK: Case number CV-25-3255-MWF SCPS LLC, et al. vs. Ben Travis Law.

MR. ROONEY: Gavin Rooney for plaintiffs.

MR. MURPHY: Paul Murphy of Murphy Rosen, also for the plaintiffs.

MR. TRAVIS: Good morning, Your Honor. Ben Travis on behalf of the individual defendants. I also have with me Haim Benoliel. He's one of the cocounsel in one of the underlying arbitrations. He's not an attorney in this case. I ask that he be allowed to sit at counsel table.

THE COURT: He may. Good morning, counsel.

There is a -- there is two things here -- rather than write a tentative, I just thought I would discuss it with you. It seems to me that perhaps the right argument is -- I mean, the right result here would be to dismiss the motion to dismiss as moot based on the sparse argument that was going here. But it just seems that with the -- that with the dismissals that are taking place, or how the shape of the case right now, I just don't know there is much left.

But then turning to something that seems to be more of what seems to be going on here, the wrong tribunal defendants, as they are called, I just don't see what is the basis here, as seems to have been the case, of saying that the defendants have the right to modify this after they received the notice. And that just -- I just am not sure

what the right of that would be.

You know, I guess these are -- these are some questions that I just thought of here. You know, the -- the -- for the defendants here, you know, what is -- is there anything left that is truly a Rule 12(b)(6) argument or challenge, as opposed to the challenge to the motion to compel, especially where there now seems to be this stipulated list of the nonuser defendants.

The other thing that was unclear to me is to the extent that the date is important, is did all of the wrong -- the remaining wrong tribunal defendants submit their notice before the modifications were purportedly implemented?

So for the plaintiffs, again, let me just say, what is the -- what is the basis that you can retroactively do this? I mean, I think it's -- obviously, that is the question here. So those are the thoughts that I have in regard to the motion.

So I guess let me hear, in regard to the 12(b)(6), first from the defendants as the moving parties, and then I'll hear from the plaintiffs.

MR. TRAVIS: Thank you, Your Honor. I appreciate Your Honor's thoughts on this.

Just to put the case in context, as Your Honor has probably noticed, this case is essentially to put roadblocks intended to prevent these claimants from proceeding in

arbitration, which they initiated in June of 2024. Those arbitrations still have not proceeded. It's also intended just to impose costs, get these claimants to drop out, and give up on their case.

We are talking about companies that are illegally operating in the United States, gambling. They have enjoyed immunity for years. They have a class action waiver in their terms. They have an arbitration clause, like many other companies that shuffle people to arbitration, and many claims are not brought in arbitration. They haven't faced a single claim in AAA before these claimants. And we know that because the AAA sent them a letter asking them to register their clause. That is only done the first time that they have a claim against them, because --

THE COURT: And as I said, I understand that you are not happy with the motion to compel. But turning specifically to the Rule 12(b)(6), which is what I would like to do before we discuss something more important, what is -- what is left of that motion at this point? Why is the motion not moot?

MR. TRAVIS: Yes, Your Honor.

So it's not moot, but -- I mean, both motions are in front of Your Honor.

As to the motion to dismiss, there were arguments both under Rule 8 and plausibility standard and Rule

12(b)(6). The Complaint does not list any -- the plaintiffs have three alleged buckets in the Complaint. One of them, they are dismissing, but there is three buckets, and it doesn't identify in the Complaint what any of the defendants fall into. How is a defendant supposed to know what the claim against him is? Are they a wrong tribunal claimant? Are they a nonuser? It is not disputed what they belong to. That is basic pleading.

THE COURT: If there is a stipulated list, why does that remain the case?

MR. TRAVIS: Well, Your Honor, it's not that there is a stipulated list. The parties have narrowed it down. There may be discrepancies between the lists.

I think at the end of the day if Your Honor agrees with me on that point, they would just get leave to amend and add that.

So I think the point is, I guess, you know, we are here anyway, so it doesn't make sense to just grant with leave to amend.

So I think as far as that standard, there is not much left there. But the other thing is the plausibility standard. As to this group of nonusers, alleged nonusers, there is no -- it's not even plausible that they are nonusers. Why? Because the plaintiffs' arbitration terms do not only apply to people registering accounts, it applies to

anybody who used a website.

Your Honor, I submit that it's implausible for them to know who has used their website. How could they know whether these are users or not? There is no way for them to know that. This does not move the Complaint -- to the level that plausibility requires.

So at least as to the nonusers, there is still some -- there is still a portion remaining from the motion to dismiss.

As far as the wrong tribunal claimants, it can go both ways on this. Their Complaint kind of is a petition to compel arbitration/complaint. They have incorporated the terms into their Complaint. Arguably, some of the arguments we made are relevant on the motion to dismiss, but they are also relevant to the motion, as well. So I could address them in that context. They carry over.

THE COURT: And as I said, do you know, or is it clear on the record as it stands, whether all of the wrong tribunal defendants did submit their notice of dispute before the modifications were sought to be implemented?

MR. TRAVIS: The answer is yes. They have all submitted it before the modification. They all submitted it in June, nine days before the modification.

THE COURT: Thank you.

All right. So then -- I'll give you a chance,

10:58:37 obviously, to address the motion to compel, but let me just hear then from the plaintiffs on this.

10:58:44 Is what -- just tell me what your legal basis is for what it is that you are attempting to do?

10:58:50 MR. ROONEY: So the legal basis is offer and acceptance, and the making of contract in a contract that requires international arbitration with a Canadian counterparty pursuant to the New York Convention on the respect of international arbitration, which is itself incorporated into the Federal Arbitration Act. That is the legal basis for our application.

10:59:13 Let me just lay out the chronology. Your Honor is right, the wrong tribunal plaintiffs had submitted letters, form letters called a Notice of Dispute about nine days before the terms and conditions were changed. The terms and conditions were changed --

10:59:28 THE COURT: Let me just say for right now, sought to be changed, or purportedly changed. I am certainly not prepared to legally say you had the right to do that.

10:59:39 So go ahead.

10:59:39 MR. ROONEY: We do have the right to change our terms and conditions with the consent of the counterparty.

10:59:44 And I point Your Honor to the *Trudeau vs. Google* decision from the Ninth Circuit in a situation somewhat similar to this one, where a party, a corporate party,

10:59:55 changed its terms and conditions to include an arbitration 10:59:58 condition in a class action waiver, which it had not 11:00:02 previously done. And the Court enforced it.

11:00:06 The important issue was acceptance. The theory of 11:00:06 the case that the claimants in the arbitrations pursue is 11:00:10 that the websites my clients provide are supposedly illegal 11:00:14 and wrongful; however, the claimants themselves continued to 11:00:18 enjoy the website and want to access it.

11:00:20 So when they asked to access the website again after 11:00:24 serving these letters, the Notices of Dispute, they were 11:00:27 specifically asked and informed, "We've changed our terms and 11:00:31 conditions. If you want to keep using our website, confirm 11:00:34 that you have read them, confirm that you agree." Each one 11:00:37 of the wrong tribunal plaintiffs did so.

11:00:41 We are not advancing this argument with regard to 38 11:00:43 other claimants who did not accept the revised terms and 11:00:48 conditions. We are not challenging their ability to proceed 11:00:51 before the AAA, but we are challenging the ability of those 11:00:54 who affirmatively accepted ADR Chambers as the arbitral 11:01:00 forum.

11:01:00 When you read the terms and conditions, they are 11:01:03 quite clear.

11:01:03 Number one, they supersede what was in place before, 11:01:07 supersede and replace the earlier terms and conditions. It 11:01:10 says that in black and white right in the first or second

paragraph.

It also says in the arbitration provision that this arbitration provision in the June 24, 2024 version applies to any past, pending or future claims.

So the intent of the document is clear on its face that it would apply in the context of a situation where somebody had sent a letter as a Notice of Dispute, recognizing that at that point in time there was no arbitrations. The arbitrations were not filed until August of 2024, two months later. And at that point the provision had been accepted by the wrong tribunal plaintiffs to go to ADR chambers. So on the basis of offer and acceptance, that is why we seek to enforce the new arbitral provision.

And I think that is enforceable under the New York Convention for Arbitration, which has a very limited scope of judicial review before enforcing arbitration.

I would refer you to Judge Kennelly's opinion in the *Ambrosia* matter, also against my client, also involving the very same terms and conditions that we are here discussing. And in that opinion, he enforced the arbitration provision, and sent that plaintiff to ADR Chambers to arbitrate their dispute.

And we are asking for the same result here. Questions of unconscionability are not countenance by the New York Convention. The New York Convention only allows courts

to look at what are defined as internationally recognized defenses that would render an agreement null and void. And that generally is interpreted to be fraud or duress; not unconscionability.

So if there is an argument that this change was unconscionable because a letter had been sent, a notice of a dispute had been sent: A, I don't think the claimants should have accepted the change and keep on using the website. They accepted the change, and they should be held to their acceptance.

Secondly, the argument of unconscionability is really for the arbitrator to decide. There is a delegation clause in our provision, it's always been there. And under *Rent-A-Center* and other progeny, that means that questions of enforceability, or scope of the arbitration agreement, are for the arbitrator.

So based upon the New York Convention, we submit that it should go to -- the Court should order arbitration before ADR chambers in Canada.

THE COURT: And what arguments do you have in regard to the motion to dismiss to the extent that those issues are distinct from what is raised in the motion to compel?

MR. ROONEY: Well, with respect to the bucketing of claimants, I think Your Honor has accurately identified the fact that it's already stipulated in the record as to who

11:04:07 goes into what bucket. We put in a joint stipulation to that effect last week.

11:04:11 With regard to the nonusers, I was actually going to try to clear the air today and say we will withdraw that part of our application. Why? Because further information was submitted on a sur-reply to try and identify who these people were, as to whether they were actually users of the service or just complete strangers to us.

11:04:31 So based upon our analysis of what came in on the sur-reply, we'll withdraw that portion of the application.

11:04:38 So I think in light of that, there is really not much left in the motion to dismiss. And I think the issue that really is for the Court's ruling is whether the wrong tribunal claimants' agreement, specific affirmative agreement to the revised terms and conditions to go to ADC Chambers to resolve disputes, whether that is enforceable, and enforceable under the New York Convention.

11:05:02 THE COURT: To grant the motion to compel, in essence, is to grant summary judgment, or at least as I understand it.

11:05:07 Is there anything as plaintiffs that you are so seeking that would not be achieved by the motion to compel and enjoin?

11:05:18 MR. ROONEY: No. We are asking for the motion to compel the wrong tribunal plaintiffs to go to ADR Chambers,

and as a consequence of that, to enjoin the AAA arbitrations by the same claimants. It's two sides of the same coin, that is true.

THE COURT: Thank you.

And what does -- what -- thank you for your arguments, counsel.

MR. ROONEY: Thank you.

THE COURT: What do the defendants have to say in response to both the legal basis for bringing this, and then the fact of the acceptance? Given if there is a limitation by carving out the nonuser defendants.

MR. TRAVIS: Yes, Your Honor. I mean, the legal basis for bringing this Complaint is frivolous and in violation of Rule 11, just to be clear on that, the fact that they are dismissing the nonusers now.

This was a, bring the lawsuit, ask questions later kind of thing. They knew they were users. There is no legal basis to bring that claim, but I appreciate them dismissing that.

I'll address the wrong tribunal claims. As to assent, there is no assent here for several reasons:

First of all, the evidence that they submitted in their motion is sparse and insufficient.

There is one screenshot that they attached alleging that this is what somebody may have seen. It does not say

where it was produced from, what basis the declarant has for knowledge of it. He is from a separate entity, an affiliate.

First of all, it's only for one of the two plaintiffs, Zula, not Sportzino. It doesn't say if it came from a computer, a phone. It doesn't say anything of that sort. It doesn't even say the date.

The arbitrations, as plaintiffs concede, were -- initiated -- the AAA part was initiated in August, but the declaration says that they have assented between the date it was changed and February 2025. Well, maybe it was February 2025 that they assented. And then the argument is even stronger. They have already initiated the AAA arbitrations. They haven't presented any evidence to this Court that that would show assent. But there is other reasons why assent is not -- there is no assent here.

First of all, all the claimants opted out from the modification. They informed the plaintiffs that they are not agreeing to this modification. There is no assent there.

They provided this modification allegedly behind the backs of counsel. They knew they were represented by counsel. That is another factor that goes into whether there was assent, as in the case we cited to *Dasher vs. RBC Bank* from the Eleventh Circuit.

So all of those things together, they haven't met their burden to show there was assent by any of the claimants

11:08:08 to this modification.

11:08:09 Secondly, plaintiffs' counsel mentioned the language of the arbitration provision about that applies to past, pending and future claims. But the arbitration terms also say it's only to initiate new disputes; not a dispute is already initiated. These were already initiated through the process that the plaintiffs required.

11:08:31 THE COURT: Well, there does seem to be, then, a dispute between the parties on whether the legally-operative date would be the notice in June or the initiation in August.

11:08:43 So what is your -- what are your legal authorities that the June notice is what matters in that regard?

11:08:51 MR. TRAVIS: Well, I mean, courts routinely enforce the pre-arbitration dispute resolution processes. If the case was as the plaintiffs are saying, that that is irrelevant, it's a nullity, well, this can happen every single time. Somebody sends them a letter because they are required to, they will change the terms, and that would be Nicaragua, Mexico, England, Ireland, wherever they want to change it to. They could just constantly change it, but that is not the law.

11:09:23 A claimant is required to go through an arbitration process, which includes trying to resolve it before going to the AAA. That is part of the process. It's laid out in the process. They started that process by sending them the

11:09:33 letters. They saw those letters, and then intentionally changed it nine days later to prevent them from proceeding in the AAA, because they never wanted to face any claims. They did this intentionally to avoid facing those claims.

But even putting that -- the assent aside, let's say there was assent, let's say Your Honor finds there was assent, the modification is unenforceable for several reasons:

Firstly, the Convention does not apply here. Contrary to plaintiffs' assertion, the Convention applies where there is foreign nations involved, or foreign entities involved, or it's envisioned that the performance would be in another country. Those are some of the bases to apply it to non-U.S. entities.

Here, they are all U.S. entities. You have the plaintiffs, who are Delaware companies. You have the claimants, who are all in the United States. No foreign entities. Performance was not envisioned to be out of the country. The terms specifically state we only provide the website in the permitted territories, which is only in the United States, excluding certain states.

How could a claimant, assuming that they read these terms, envision that the performance, the use of the website, the casinos taking their money, any of their claims would -- that anything would have to happen in Canada, in Ontario,

Canada, far away? There is no basis for that. The Convention does not apply here.

The FAA applies. It involves interstate commerce. But under the FAA, there are several reasons it can't be enforced, either:

Firstly, 9 U.S.C. 4, it says when they bring an application to compel arbitration, the Court can order arbitration, but only within the district in which the application is brought.

Now, if this were Ontario, California, that is one thing, it's in this district. Ontario, Canada is not in this district. The Court has no authority under the FAA to order arbitration in Canada.

And then the other reason plaintiffs alluded to: unconscionability. Unconscionability here, there is a delegation clause, we concede that point, but we have -- we have attacked the delegation clause itself. The delegation clause is unconscionable for the same reason that the arbitration terms are unconscionable.

And as Your Honor knows, unconscionability goes on a sliding scale: procedural unconscionability, substantive unconscionability. There is high levels of both here. So wherever the scale falls on either one. In any event, both procedural and substantive are highly unconscionable. This modification cannot be enforced.

Why is it procedurally unconscionable? The contract of adhesion. There was no ability for the claimants to modify the terms, to negotiate them. According to the plaintiffs, they couldn't even opt out from the terms. So there was no ability for them to -- it was a take it or leave it.

But there is also surprise. Now, the --

THE COURT: Counsel, I deal with the sliding scale all the time, so I think -- let me -- let's just put that aside for a moment, especially where there is the issue of the delegation. I understand why it is that you feel the delegation doesn't apply here.

Is there anything else, then, in response to the reasoning that was set forth by the plaintiffs, as to why they had the right to engage in the modification?

MR. TRAVIS: Your Honor, I don't think there is anything additional.

I strongly believe, as Your Honor indicated initially, where Your Honor was leaning, that these were already initiated through in June. They cannot just go around and change the terms behind their backs.

But I don't have any additional reasons other than what I've already stated.

THE COURT: Thank you.

And let me -- let me hear, then, from the plaintiffs

in regard to those arguments.

Specifically, I take it you would agree that the applicability of the Convention is not something which has been or could be delegated to the arbitrator, as opposed to unconscionability, which I understand very well why you believe that would be part of the delegation.

MR. ROONEY: Well, I think it's for this Court to compel arbitration pursuant to the Convention. So it is an issue for the Court; not for the arbitrator. That is why we are bringing it here and not to the AAA for clarity, because I think it's this Court's function.

If I could address some of the points that Your Honor addressed with my adversary?

The first thing, which is really not immediately relevant, but when someone accuses me of Rule 11 conduct, I feel I have to say something in response about the nonusers.

We started with just a list of names. We asked the defendants, "Provide each person's player ID. When you establish an account with my clients, everyone gets a unique player ID, which you can get by just checking your account settings on the app." That they refused to give us inexplicably.

As a result, we had to search through more than 5 million customer records to try and find names that might or might not match, and it was something of a nightmare. And we

could not, and it's been an evolving process.

I will also note that there is about 100 claimants that have now been dismissed because they fell into the nonuser category. But now we are told they are no longer proceeding before the AAA. So from my perspective, you know, there are clearly a great many strangers to us in the mix.

But putting that now pretty much irrelevant issue aside, and turning to the wrong tribunal claimants, we are not dealing with a change that was made behind anyone's back, as my adversary, I think, wrongly asserts.

Affirmative consent was sought. Thirty-eight of the parties did not consent, did not log on to the website and click "I agree". We are not alleging that those folks need to go to Canada.

The only people we are alleging that need to go to ADR Chambers are the folks who clicked, "Yes, I agree to that change." And as I said, the change in the changed terms and conditions are quite clear that they apply to any past, pending or future disputes. Past, pending or future disputes. That is the language.

I don't think the June letters, which are just a stack of form letters in which someone with a mail merge inserted a bunch of names that were derived from an Excel spreadsheet, I don't think that becomes the relevant date when the arbitrations weren't filed until a couple of months

later.

But having said that, the issue is consent. And as we saw in the *Trudeau vs. Google* opinion from the Ninth Circuit, where there is consent, parties can change the terms and conditions.

Now, this is not a unilateral change. And some of the cases that my adversary cites in the briefs deal with the concept of an illusory arbitration agreement where the defendant reserved to itself the right to make unilateral changes. That is not what we are dealing with here.

We are dealing with a situation where the counterparty was asked to consent as the quid pro quo for continuing to use and enjoy the service, and they accepted. Nothing was done behind anyone's back. And we are enforcing what I think are base principles of contract performance and acceptance.

In terms of the applicability of the Convention, my clients have all of their operations based in Canada. If you go through the terms and conditions, the Canadian connection is quite clear. It has a Canadian choice of law clause. It refers to the websites being owned by Blazesoft Ltd., which is a Canadian company. And it also references mailing addresses in terms of the copyright agent as address for correspondence, all of which is Ontario, Canada.

THE COURT: What about the argument that only one of

11:17:45 the plaintiffs has even purportedly offered anything as to
11:17:51 the consent?
11:17:53 MR. ROONEY: I think that is a mischaracterization
11:17:55 of Mr. German's, the Yuliy German's declaration we submitted
11:17:59 in support of our motion.
11:18:00 He is in charge of the operation of both of these
11:18:03 websites. He describes in detail how the websites operate,
11:18:08 how consent is solicited and obtained from all users. And he
11:18:13 presented the screenshot as, you know, a representative
11:18:17 example of what would have been seen.
11:18:20 Now, there is no contrary evidence -- I mean, they
11:18:23 are trying to raise doubts about what Mr. German said. What
11:18:28 I think what he said was definitive. But in cases where the
11:18:31 courts have found that a click wrap agreement wasn't
11:18:34 established, there has always been contrary evidence, a
11:18:37 declaration from the consumer saying, "Well, that is not what
11:18:40 I saw," or a declaration from the consumer saying, "I never
11:18:43 agreed to that. That was not required of me." There is no
11:18:46 contrary evidence whatsoever in this record.
11:18:48 So if you are looking at this, Your Honor, on a
11:18:51 summary judgment record, you know, it's -- the evidence is
11:18:53 all on one side. There is no contrary evidence that has been
11:18:57 offered.
11:18:57 Now, they have put in, I think, 27 declarations on
11:19:01 the nonuser issues, and they have put in 11 declarations on

11:19:04 the ability to pay issue. I presume that if somebody really disputed whether they consented to this change, we would have seen a declaration to that effect, and there is none in this record.

11:19:14 THE COURT: All right. Counsel, the 11:00 calendar lawyers have been waiting very patiently, so I am -- I appreciate your arguments on letting me know what the current situation is here. It's obviously an odd situation where we all recognize, who you would think to be the plaintiffs and the defendants, have kind of reversed.

11:19:38 So this has been very clarifying for me. I appreciate your briefs. I appreciate your arguments. The two motions are taken under submission.

11:19:46 MR. ROONEY: Thank you, Your Honor.

***** ***** *****

I certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

---------------------------

Amy C. Diaz, RPR, CRR January 30, 2026

S/ Amy Diaz